**SO ORDERED.**

**SIGNED this 16 day of September, 2015.**

_Stephani W. Humrickhouse_
**Stephani W. Humrickhouse
United States Bankruptcy Judge**

___

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| STEPHEN E. CREECH AND<br>EDNA B. CREECH, | 13-00817-8-SWH |
| DEBTORS | |

### ORDER DENYING MOTION TO DISMISS

The matter before the court is the motion to dismiss the debtors' chapter 11 case for cause under 11 U.S.C. § 1112(b) filed by Ormond Oil & Gas Co., Inc. ("Ormond"). Hearings on the motion were held on April 9, 2015, and on July 7, 2015.[1]

### BACKGROUND

Stephen E. Creech and Edna B. Creech (the "debtors") have owned and operated Creech's Greenhouse ("Creech's"), a greenhouse wholesale business in Selma, North Carolina, since the 1970s. Creech's grows and sells plants to wholesalers, florists and other stores. Ormond is a supplier of propane, and for the past thirty years, supplied propane gas to the debtors to heat the greenhouse.

___

[1] The July 7, 2015 hearing consisted solely of closing arguments.

Creech's operations require large upfront costs, and business typically ebbs and flows seasonally, with heightened sales around the holidays. Prior to the bankruptcy filing, Creech's was able to counteract the large upfront costs involved with the business with longer terms for payables, but this arrangement became increasingly difficult to obtain. The self-described "feast or famine" revenue cycles, combined with a string of unfortunate and untimely events, ultimately made it impossible for the debtors to remain current on operating costs, including payments to Ormond. On February 8, 2013, the debtors filed a petition under chapter 11 of the Bankruptcy Code.

The debtors have continued doing business throughout the course of their bankruptcy case through a modified business model, and their plan of reorganization proposes to make plan payments from business operations.[2] On June 14, 2013, A&E Wholesale, LLC ("A&E") was formed by the debtors' daughter, Amy Radford, and her husband, Michael Radford, to act as a wholesaler and provide a majority of Creech's delivery services.[3] A&E absorbs Creech's payroll expenses and also purchases certain necessary products for Creech's benefit.

On April 18, 2014, Ormond filed the instant motion to dismiss primarily grounded on the alleged impropriety of the relationship between the debtors and A&E. Ormond contends that A&E has siphoned off customers, goodwill and going-concern value from Creech's to the detriment of the bankruptcy estate and creditors. As such, Ormond asserts that cause for dismissal is warranted under 11 U.S.C. § 1112(b)(1) based on alleged substantial or continuing loss or diminution of the estate and the lack of a reasonable likelihood of rehabilitation; gross mismanagement of the estate; and unexcused failure to timely satisfy filing or reporting requirements. In response, the debtors

---

[2]The debtors maintain that their monthly social security income is sufficient to cover household expenses.

[3]The debtors each own a 24 percent membership interest in A&E.

maintain that the formation of A&E has been a major contributor to Creech's survival because A&E has access to credit and is able to purchase necessary products for Creech's on better terms than Creech's could receive. A&E's existence has also helped reduce Creech's costs and expenses.

## DISCUSSION

Ormond seeks dismissal under § 1112(b)(1), which provides that the court "shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause . . . ." "Cause" includes:

> (A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;
> (B) gross mismanagement of the estate;
> . . .
> (F) unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter.

§ 1112(b)(4). Determining the existence of cause entails a fact-specific inquiry of the debtor's post-petition circumstances. In re Paterno, 511 B.R. 62, 66 (Bankr. M.D.N.C. 2014). In deciding whether dismissal or conversion is warranted, the court is mindful of the twin goals of a chapter 11 reorganization: preserving viable businesses and maximizing creditors' returns. See 7 Alan N. Resnick & Henry J. Sommer, Collier on Bankruptcy ¶ 1112.04[5][a] (16th ed. rev. 2011). Generally, if allowing the case to go forward would promote these goals, "the case is probably not a candidate for conversion or dismissal under section 1112(b)." Id. The movant bears the burden of proving cause by a preponderance of the evidence, and once a *prima facie* showing is made, the court must determine whether unusual circumstances exist that prevent dismissal or conversion. In re Modanlo, 413 B.R. 262, 271 (Bankr. D. Md. 2009). Additionally, the court must determine whether conversion or dismissal is in the best interests of creditors and the estate. Id.

*A. Substantial or Continuing Loss or Diminution to the Estate*

The court will first consider whether there is cause to dismiss based on "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation" under § 1112(b)(4)(A). Cause under § 1112(b)(4)(A) involves a two-pronged test: (1) whether the debtor has suffered or continues to experience a negative cash flow or declining asset values; and (2) whether the debtor lacks a reasonable likelihood of reestablishing itself on a firm, sound basis. In re Surtronics, Case No. 13-05672-8-SWH, 2014 WL 2581159, at *2 (Bankr. E.D.N.C. June 9, 2014). If the movant fails to satisfy either prong, the court must deny the motion to convert or dismiss. Paterno, 511 B.R. at 66.

The post-petition loss or diminution must either be substantial or continuing to satisfy the § 1112(b)(4)(A) standard, but need not be both. Id. The circumstances indicating substantial or continuing loss or diminution must have occurred post-petition; pre-petition events will not establish cause. Id. at 68. The debtor's financial prospects and records are relevant to this inquiry. In re Gateway Access Sols., Inc., 374 B.R. 556, 564 (Bankr. M.D. Penn. 2007). An inability to pay ongoing expenses, combined with an absence of reliable income, can establish cause. Paterno, 511 B.R. at 67.

In Gateway, the court found that the evidence indicated a pattern of declining assets and substantial continuing losses where the monthly operating reports showed a sharp decline in the debtor's cash position, disbursements exceeded earnings many times over, and the debtor continued to incur post-petition loans. 374 B.R. at 564. Specifically, the debtor's January monthly report showed a starting cash balance of $125,739.00, whereas the June monthly report showed a starting cash balance of only $11,870.00. Id. Additionally, over the same six-month period, the debtor's earnings, totaling $30,671.00, were largely overshadowed by disbursements of $335,800.00. Id.

Substantial and continuing loss has been found where a debtor did not engage in any business activity and had no income or funds to make payments, while at the same time continued to accrue post-petition debt and administrative costs. In re Landmark Atl. Hess Farm, LLC, 448 B.R. 707, 714 (Bankr. D. Md. 2011). In In re Forest Grove, LLC, 448 B.R. 729, 742 (Bankr. D.S.C. 2011), the debtor maintained throughout the case that the caretaker of its property would make the monthly rent payments and make additional contributions to the debtor if necessary. The court in Forest Grove found that this was not enough to rebut substantial and continuing loss, as such payments never materialized and no evidence was presented to establish the caretaker's ability to make payments. Id. Further, the debtor's monthly reports showed no income and consistent negative profits. Id.

On the other hand, a mere decrease in business volume and difficulty obtaining new customers is not enough to establish substantial or continuing loss or diminution. Surtronics, 2014 WL 2581159, at *2. In Surtronics, the debtor experienced positive post-petition cash flow in four out of seven months and remained current on all post-petition expenses. Id. at 3. Similarly, in In re Gregory & Parker, Inc., Case No. 12-01382-8-SWH, 2013 WL 2285671, at *5 (Bankr. E.D.N.C. May 23, 2013), there was no substantial or continuing negative loss where the debtor experienced positive post-petition cash flow even while making monthly adequate protection payments and paying most of its administrative expenses, and had positive net operating incomes for seven months and negative net operating incomes for only five months. 2013 WL 2285671, at *5.

The court finds that the circumstances in this case do not warrant a finding of substantial or continuing loss or diminution. First, the debtors did not siphon off Creech's customers, goodwill or value to A&E. Rather, A&E was formed to provide a source for Creech's to obtain products it needed but could not obtain credit for, and to relieve Creech's of some of its expenses. The

5

evidence before the court shows that A&E has helped, rather than injured, Creech's. The beginning balance of the debtors' pre-petition business account upon their bankruptcy filing in February 2013 was $12,369.40. Since that time, the debtors have maintained a positive balance in Creech's debtor-in-possession operating account for all but four months through July 2015. Creech's monthly expenses have exceeded monthly income for half of all months, but this does not indicate substantial or continuing loss or diminution. Creech's business operations demand upfront costs and expenses with income often being realized in later months. Because business is seasonal, some months entail higher expenses, and in some months, income exceeds expenses. This state of affairs does not translate into the debtors or Creech's continually experiencing negative cash flow – it simply reflects the seasonal nature of the business.

The debtors' monthly operating reports indicate that Creech's was more profitable between January and May of 2015 than it was during the same time period in 2013[4] and 2014. Between January and May of 2015, Creech's total monthly income exceeded expenses by roughly $12,500.00; in 2014, this figure amounted to roughly $3,400.00; and in 2013, this figure amounted to roughly $7,000.00. Overall income has declined since 2013, but this corresponds with a substantial drop in expenses. Creech's also enjoys a regular stream of income. The monthly income-to-expense ratios simply do not show that Creech's has experienced substantial or continuing loss post-petition. Furthermore, Creech's experienced a larger profit in April 2015, its busiest month, than in April 2014 or April 2013.

---

[4]The respective period for 2013 began in February, since the debtors did not file for bankruptcy until February.

This is clearly not a case where the operating account has been depleted and there is no income to fund ongoing expenses. In contrast to many of the cases cited above where there was substantial or continuing loss, the debtors have been able to pay current expenses and have also been able to make monthly adequate protection payments to the only secured creditor in this case, Four Oaks Bank. Additionally, Amy Radford testified at the hearing that Creech's incurred certain unexpected repair costs in 2014 that would not be expected to reoccur, and that gas expenses are expected to drop by about half in the coming year. These facts show that Creech's appears to be stabilizing. The court is simply unable to find the existence of loss or diminution, let alone loss or diminution that is substantial or continuing.

Because Ormond cannot satisfy the first prong of § 1112(b)(4)(A), the court need not consider whether there is a reasonable likelihood of rehabilitation.[5]

*B. Gross Mismanagement of the Estate*

The court will next consider whether cause exists under § 1112(b)(4)(B) for gross mismanagement of the estate. Ormond asserts that the "siphoning off of customers, goodwill, and going-concern value to A&E" represents a gross mismanagement of the estate. Additionally, Ormond contends gross mismanagement is shown by discrepancies between the debtors' liquidation analysis and the value of Creech's inventory and accounts receivables. Specifically, Ormond points to the $100,000.00 inventory value listed on the debtors' Statement of Financial Affairs as compared with the debtors' August 2013 liquidation analysis, which omits the inventory altogether, and the fact that the August 2013 liquidation analysis shows liquidated debts as having a value of $0.00,

---

[5]The court presently has confirmation of the debtors' plan of reorganization under advisement.

whereas the debtors' Schedule B lists $80,000.00 of accounts receivable. See Ex. D to Ormond's Motion to Dismiss, Doc. No. 138 at 38; Ex. E, Doc. No. 138 at 39; Ex. F, Doc. No. 138 at 40.

Gross mismanagement of the estate that occurs post-petition is cause for dismissal or conversion under § 1112(b)(4)(B). § 1112(b)(4)(B); 7 Collier on Bankruptcy ¶ 1112.04[6][b]. Courts have generally found gross mismanagement of the estate where debtors fail to seek court approval before taking certain actions outside the ordinary course of business, such as paying pre-petition debts or incurring debt, where debtors file monthly reports without closely monitoring them, and where the business lacks effective management. See Gateway, 374 B.R. at 565-66; In re Alston, Case No. 13-1855, 2013 WL 6210249, at *7 (E.D. Penn. Nov. 27, 2013) (incurred loans, paid former attorney without court approval); In re Wallace, Case No. 09-20496-TLM, 2010 WL 378351, at *5 (Bankr. D. Idaho Jan. 26, 2010) (paid professionals and pre-petition debts, obtained financing without court approval). In Gateway, the court found that the "lack of a focused reorganization management team" constituted gross mismanagement of the estate. 374 B.R. at 564. The debtor's sole director worked as an anesthesiologist, and dedicated time after work for rehabilitating the debtor, but represented that he had no time to work on business models to present to the court to establish likelihood of reorganization, and barely had time to keep day-to-day operations going. Id. at 565. It was evident to the court that time management issues prevented the debtor's management from utilizing the time and experience that successfully restructuring the business required. Id.

The court is satisfied that there has not been a gross mismanagement of the estate that would warrant dismissal. The circumstances do not indicate that the debtors have improperly taken action without authorization of the court or filed monthly reports without close examination. Additionally, it cannot be shown that the current management is ineffective. As discussed above, Creech's did

not siphon off valuable parts of the business to A&E, and A&E's formation was directed toward helping Creech's survive. Creech's and A&E are involved in different aspects of the business.

Additionally, the differences between the liquidation analysis and the value of inventory and accounts receivables at varying times do not amount to gross mismanagement. The debtors' explanation for the absence of these amounts from the liquidation analysis was that as of the petition date, the value of the inventory and accounts receivables was more than offset by payables due and owing. Ormond is correct that the debtors' Schedule B lists the value of the inventory as $0.00, whereas the Statement of Financial Affairs shows a value of $100,000.00. However, the Statement of Financial Affairs represents the value as of the date of the last inventory taken, which occurred in January 2013; it is reasonable that the debtors would have more inventory at this time given the proximity to a holiday season. The value of the inventory and the outstanding accounts receivables fluctuates seasonally, corresponding to slow and busy seasons. The court accepts the debtors' explanation for purposes of finding no cause to dismiss the case. Ormond's concerns regarding the liquidation analysis are more appropriately considered in the context of confirmation under § 1129(a)(7).

*C. Failure to Satisfy Filing or Reporting Requirements*

Finally, the court will consider whether cause exists under § 1112(b)(4)(F) for "unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter." Ormond argues that details surrounding A&E's business should have been disclosed in the debtors' monthly reports and related entity reports, and the debtors' failure to do so warrants dismissal. Pursuant to § 1106(a)(1), a debtor-in-possession is required to perform the duties of a trustee specified in § 704(a), which includes the filing of periodic

reports and summaries of business operations. §§ 704(a)(8), § 1106(a)(1). "Operating reports and the financial disclosures accompanying them are the life-blood of the Chapter 11 process. They are the means by which creditors can monitor a debtor's post-petition operations, and, as such, are an important obligation of a debtor in possession." In re 210 W. Liberty Holdings, LLC, Case No. 08-677, 2009 WL 1522047, at *7 (Bankr. N.D.W. Va. May 29, 2009). To warrant cause for dismissal or conversion, the non-filing or untimely filing of required reports must be "unexcused"; therefore, it is within the court's discretion to determine whether the debtor's failure establishes cause. Landmark, 448 B.R. at 716; see also 7 Collier on Bankruptcy ¶ 1112.04[6][f].

An examination of the case law reveals that although "many small business debtors are guilty of the same omissions," courts will not excuse reporting failures and will find cause for dismissal or conversion when the failures are "egregious" and in "flagrant disregard" of reporting duties. In re Whetten, 473 B.R. 380, 384 (Bankr. D. Colo. 2012) (debtors' egregious negligence compelled court to send a message that disregarding reporting duties may constitute cause for dismissal or conversion); see also In re Tucker, 411 B.R. 530, 532 (Bankr. S.D. Ga. 2009) (although initial delay was excusable under circumstances, conversion was warranted in light of the fact that the monthly reports contained incomplete, misleading and materially false information; delays were unexcusable after debtor hired professionals to prepare reports).

In Whetten, the small business debtor failed to file any monthly reports until six months into the case, when it filed an accumulation of five months' worth of reports, which was subsequently followed by another four month gap between reports. 473 B.R. at 383. The individual debtor filed his first nine months' worth of monthly reports ten months into the case. Id. This cycle of tardily filed reports continued. Id. Additionally, the reports were not filed in a complete and accurate

10

manner, and were in fact "extremely deficient" by failing to include accounts payable and receivable information, a schedule of payments to professionals and post-petition taxes payable, and bank account reconciliations. Id. The debtors' delayed attempts at cure did not negate the effect of their prior failures or excuse them. Id. "Filing catch-up reports is akin to locking the barn doors after the horses have already gotten out." Id. Similar findings have been made by other courts that refuse to excuse such failures. See In re Tri-Check Seeds, Inc., Case No. 12-11409, 2013 WL 636031, at *4 (Bankr. S.D. Ga. Feb. 7, 2013) (debtor failed to file reports until faced with two motions to dismiss, whereupon he filed delayed reports for five months); Landmark, 448 B.R. at 716-17 (debtor's filing of catch-up monthly reports two days prior to the hearing on the motions to dismiss or convert did not excuse the failure).

The court finds no cause for which to dismiss the debtors' case under § 1112(b)(4)(F). The debtors have timely filed accurate and complete monthly reports, and there are no allegations to the contrary. This is further evidenced by a lack of concern or objection on behalf of the bankruptcy administrator ("BA") relating to those reports. Although the first related entity report was not filed until July 2, 2014, the court deems this delay excusable. A&E was not created until June 2013, and its existence apparently came to the attention of the BA sometime prior to May 2014, when the BA filed a motion for 2004 examination and requested certain documents and information regarding A&E. Thereafter, the BA filed a second motion for 2004 examination, seeking production of the related entity report by July 11, 2014. The debtors complied, and additionally amended their proposed disclosure statement on August 6, 2014, to detail A&E's role. There was no motion for show cause or other type of disciplinary action taken with regard to the debtors' disclosure of A&E aside from the instant motion to dismiss. Rather, the court and the parties in interest have been

aware of its existence for more than a year. Furthermore, since the filing of the initial related entity report, the debtors have timely filed related entity reports or received extensions of time to file. These circumstances are a far cry from the outrageous omissions of debtors for which courts have found cause to dismiss. Additionally, in light of A&E's relationship to Creech's, particularly that it only serves in a limited capacity to help Creech's in areas in which Creech's was deficient or struggling, and has not received compensation from Creech's, the delay in filing the related entity report is excusable. The court also sees no reason why A&E's existence should have been disclosed on the monthly reports, as there were no transfers of funds between the two entities.

As such, the court finds no cause for which to dismiss this case for failure to timely satisfy filing or reporting requirements.

## CONCLUSION

In conclusion, the court finds that Ormond has not met its burden of establishing cause to dismiss the debtors' case under §1112(b). The court is not persuaded that there has been either substantial or continuing loss or diminution to the estate; gross mismanagement; or a failure to timely satisfy filing or reporting requirements. For the reasons recounted above, Ormond's motion to dismiss is **DENIED**.

## END OF DOCUMENT